Louisville & N. R. R. Co. v. Hall.

CASE 69—ACTION BY W. H. HALL AGAINST THE L. & N. R. R. CO. TO
  RECOVER DAMAGES FOR PERSONAL INJURIES.—MAY 19.

# Louisville & N. R. R. Co. v. Hall.

APPEAL FROM BULLITT CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.    REVERSED.

MASTER AND SERVANT—RAILROAD EMPLOYE—INJURIES—FILING ACTION
  —LIMITATION—AMENDED PLEADING—PROPRIETY OF FILING—NEG-
  LIGENCE—MEASURE OF DAMAGES—INSTRUCTIONS.

Held:    1. Kentucky Statutes 1899, section 2524, provides that an ac-
tion shall be deemed commenced when the first process is issued.
Civil Code, section 39, provides that an action is commenced by
filing the petition and causing a summons to be issued. Section
132 permits a plaintiff at any time before answer to amend
without leave; and section 134 provides that the court may at
any time, in furtherance of justice, permit a plea to be amended
by correcting a mistake. Plaintiff was injured August 15, 1899,
and began action August 16, 1900. Defendant answered at the
September term, and at the following March term, before reply,
tendered an amended answer, pleading limitations. Plaintiff
filed an affidavit of the clerk stating that he received the petition
August 5, 1900, with a letter requesting that it be filed and sum-
mons issued, but that no tax accompanied it, for which reason
he did not file it, but, when questioned by plaintiff's attorney
several days prior to the 16th, informed him that it had been
filed, and did not discover his error until the 16th, when he
filed the petition and issued summons. HELD, that a refusal
to permit defendant's amended answer to be filed was error.
2. Plaintiff, who was employed by a railroad company to load en-
gines with coal from bins by means of portable chutes, was in-
jured by being struck by a chute while he was riding on the
ladder on the side of a box car. HELD, that an instruction that
it was negligence, as a matter of law, not to keep the coal
chutes, when not in use, far enough from the tracks so as not
to injure employes so situated, was error.
3. An instruction that if plaintiff "knew" that the chute was too
close for reasonably safe passage, the jury should find for de-
fendant, was error, as defendant was entitled to a verdict if
plaintiff knew, or could by the exercise of ordinary care have
known, that fact.

115  567
122  619
f124  809

115  567
f131  253

4. In an action for personal injuries, an instruction that in estimating damages the jury should consider the age and situation of the plaintiff, his earning capacity and its probable duration, his bodily suffering and mental anguish, and the extent to which he is unable to make a support for himself, is erroneous, as not confining the damages to the expenses of cure, value of time lost, a fair compensation for physical and mental suffering, and any permanent reduction of earning power.

5. Such instruction is also erroneous in permitting the jury to consider the situation of the plaintiff.

An instruction in a personal injury case permitting an award of punitive damages without requiring, as a condition precedent, a finding of gross negligence, is erroneous.

7. Where a railroad employe, injured while on the side of a box car by being struck by a portable chute used to convey coal from bins to locomotives, admits that he knew the chutes were portable and frequently moved from one place to another and that they were too close to the track for safe passage by employes situated as he was, and that his injury resulted solely from the fact that he believed the car on which he was had passed the chutes when he assumed his dangerous position, an instruction permitting an award of punitive damages is erroneous.

B. D. WARFIELD, FOR APPELLANT. (FAIRLEIGH, STRAUS & EAGLES AND EDWARD W. HINES OF COUNSEL.)

POINTS AND AUTHORITIES DISCUSSED.

1. The great preponderance of the evidence shows that appellee was not in the performance of any duty to the company when he was injured, but was wrongfully riding on appellant's train, in the pursuit of his own private devices and desires, and in disregard of the rules of, and contrary to his duty to, the appellant.

2. Even on appellee's own testimony he was guilty of negligence which so far contributed to produce the injury he sustained, that but for his negligence he would not have been injured, and the court should have given peremptory instruction to find for appellant on the ground that, as matter of law, appellee's own negligence barred a recovery. L. & N. R. Co. v. Mounce's Admr., decided January 21, 1903; L. & N. R. Co. v. Scanlon, 22 K. L. R., 1400; Bush, &c., v. Grant, 22 Ky. Law Rep., 1766; P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; I. C. R. R. Co. v. Dick, 91 Ky., 434.

3. There is no presumption of negligence against the master when the servant is injured. Daniel Brooks v. L. & N. R. Co., decided January 15, 1903.

Louisville & N. R. R. Co. v. Hall.

4. The verdict is not sustained by sufficient evidence. Price, Admr. of Mansell, v. Cockran, 1 Bibb, 570; Mercer v. Clark, 3 Bibb, 224; Reid v. Langford, 3 J. J. M., 420; Newsom v. Lycan, 3 J. J. M., 440; Page, &c., v. Carter, 8 B. M., 192; L. & N. R. R. Co. v. Graves, 78 Ky., 74; Deposit Bank of Sulphur v. Peak, 23 Ky. Law Rep., 19; Bogard, &c., v. Turner, &c., 23 Ky. Law Rep., 630; Carpenter v. Carpenter, &c., 23 Ky. Law Rep., 2180; L. & N. R. Co. v. Carter, 23 Ky. Law Rep., 2020; I. C. R. Co. v. Radford, 23 Ky. Law Rep., 886; 14 Ency. of Pl. & Pr., 776, et seq.

5. The court erred in refusing to permit appellant to file an amended answer which it offered to file, pleading the statute of limitations. Civil Code, secs. 132, 134; Wood v. Carpenter, 100 U. S., 135; Ky. Stats., sec. 2524; Civil Code, sec. 39; Kellar v. Stanley, 86 Ky., 240; L. & N. R. Co. v. Smith's Admr., 87 Ky., 501.

6. Instructions 1 and 2, given on appellee's motion, are vitally erroneous and highly prejudicial to appellant. L. & N. R. Co v. Mounce's Admr., decided January 21, 1903; Needham v. L. & N. R. Co., 85 Ky., 432; L. C. & L. R. Co. v. Mahoney's Admr., 7 Bush, 237; C., N. O. & T. P. Ry. Co. v. Shelby, 11 Ky. Law Rep., 527.

7. Instruction 2, as to the measure of damages, is erroneous and prejudicial. K. C. R. Co. v. Ackley, 87 Ky., 278; L. C. & L. R. Co. v. Caven's Admr., 9 Bush, 728; Muldraugh's Hill, C & C. T. P. Co. v. Maupin, 79 Ky., 101; N. N. & M. V. Co. v. Walker, 14 Ky. Law Rep., 175; C. P. R. Co. v. Kuhn, 86 Ky., 578; Parker v. Jenkins, 3 Bush, 560; Tierney case, 96 Ky., 89.

8. The court erred in authorizing the jury to find punitive damages under the facts of this case. Standard Oil Co. v. Tierney, 96 Ky., 89; Creighton and Stock cases, 106 Ky., ——; L. & N. R. Co. v. Law, 14 Ky. Law Rep., 850; L. & N. R. Co. v. Bell, 100 Ky., 203; L. & N. R. R. Co. v. Bernard, 18 Ky. Law Rep., 672.

9. Appellant was entitled to have its theory of the case sharply presented to the jury. The court erred in this respect, both in giving instruction 1, and in refusing to give instruction 14, asked by appellant. I. C. R. Co. v. Jackson's Admr., 23 Ky. Law Rep., 1408; Helm v. L. & N.-R. Co., 17 Ky. Law Rep., 1004.

10. The trial court should have discharged the jury and continued the case, because of misconduct of appellee's counsel in his closing argument to the jury. Having failed to do this, this court should reverse the judgment and direct a new trial for this reason, if there were no other reason for doing so. McHenry Coal Co. v. Sneddon, 98 Ky., 687.

W. S. PRYOR, FOR APPELLEE.

B. F. COOPER, OF COUNSEL.

Appellee was a common laborer employed to furnish the cars with coal as they passed the station, and throwing coal in and out of the bins, and had been so employed for some months. He was connected directly with appellant's trains, in supplying them with coal, and with their portable chutes moving up and down the platform so as to meet the demands for coal as the trains approached the bins. When this accident happened, he had finished his day's work, when the foreman of the coal yard, in the employ of appellant, under whose orders appellee was working, required that he should aid in detecting those who had been stealing coal from the bins, and at the direction of the foreman he went on top of the car where he would not be seen, and where he could better detect the guilty parties. When on top of the cars, one of the movable chutes had been left at a place where it was unusual to leave it, and left at the instance of one of the managers of the yard, who was too indolent to move it, and it was left so close to the cars that as they passed by, it was dangerous for one to climb down the ladder to the platform, and appellee in getting down off of the car was knocked from the side ladder by this chute and badly injured.

He used proper precaution in leaving the car and believed he had passed all these chutes, and we claim that the leaving of this one in such proximity to the cars was negligence of the grossest kind, and the damages recovered are not sufficient in amount for compensation or punishment for this great wrong.

The appellant, through its agents, knew that the fault was with its management, and yet we find them, within nine days after the accident happened, with a detective and typewriter going to appellee's humble home' where he lay with both legs torn into fragments and racked with pain, and extracted from him a statement that it was all his own fault, and that he had no business on that train.

We submit that there was never a plainer case of an effort to suppress the truth.

On the question of the pleadings we hold (1) that where the issue tried involved facts omitted in the pleadings, the defect is cured by the verdict. (2) That defective allegations of the petition may be cured by the answer, and in this case if there were defects in the petition, they were cured by the answer and verdict.

On the question of limitation we hold that it is not the duty of the attorney or his client to stand by and see the clerk issue

the summons. When the petition is received by the clerk it is his duty to issue the summons, and the attorney and his client may rely on the clerk knowing his duty and doing his duty. It was, therefore, in the discretion of the court to permit the plea of limitation tendered by appellant in an amended answer to be filed, and certainly no abuse of discretion after the sworn statement of the clerk had been made.

We submit that the instructions given by the court are not prejudicial to the appellant under the evidence, and that the verdict should not be disturbed.

### AUTHORITIES CITED.

Stephens on Pleadings. p. 226; 6 B. Mon., 379; Canal Co. v. Murphy, 9 Bush, 527; Bugg v. Maltby, 2 Met., 90; Fible v. Caplinger, 13 B. Mon., 466; L. & N. R. R. Co. v. Smith's Admr., 87 Ky., 506; 37 Mich., 205; 52 Ill., 401; 49 Mich., 573; 90 Va. St. Rep., 492, 687; (Bogenschutz v. Smith, 84 Ky.; Carter Mining Co. v. Stephens, 104 Ky., have no application to a case like this).

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

The appellee, W. H. Hall, was one of a gang of laborers employed by the appellant, the Louisville & Nashville Railroad Company, to perform such services as might be necessary about the coal bins from which it supplied its engines with coal at Lebanon Junction. The bins are about 800 feet in length, and are built along a side track, on which appellant operated three large, portable coal chutes, from which the tenders of the engines were loaded. On the 15th of August, 1899, the appellee, Hall, came in contact with one of these coal chutes whilst descending the side ladder from the top of a box car attached to a moving freight train, and was knocked between two cars, and his legs run over and so crushed as to require amputation. On the 16th of August, 1900, he instituted this suit for damages, alleging as a cause of action that he had been directed by the foreman in charge of the coal bins to try to detect certain parties who were stealing coal from the bins, and

for this purpose was allowed to board freight trains after they had been supplied with coal and ride along the bins, that on the 15th day of August, 1899, he climbed to the top of a box car of a slowly passing train, and remained on the top of the car until it had passed, as he supposed, the three coal chutes on the side track; that he then descended the side ladder of the box car for the purpose of alighting near the far end of the coal bins, when he suddenly came in contact with one of these chutes which had been moved from its customary place near the other two, and without his knowledge, and had been negligently left standing on the side track in such close proximity to the main track that his body could not pass between the chute and the moving train; and that as a result of this negligence he was knocked from the side of the car and run over by the train, sustaining injuries therefrom which resulted in the loss of both of his legs. He charges that these injuries were the result of the defendant's negligence in failing to construct and keep its portable coal chutes at a proper and safe distance from its passing cars.

At the following September term of the Bullitt circuit court, defendant answered, traversing specifically all the affirmative allegations of plaintiff's petition, and saying further, by way of defense, that the plaintiff had been employed about its coal bins for many months prior to receiving the injuries sued for; that he was familiar with its portable chutes and the construction thereof, and was thoroughly familiar with their proximity to the main track; that he received the injuries sued for whilst he was riding on the side ladder of one of their freight cars in violation of one of the rules of the company, and for his own pleasure and convenience, and not on any business of the company, or in obedience to any direction, express or implied, of the

foreman of the coal bins; that he was at a place where he had no right to be, and where no duty of his employment called him, and received the injuries complained of as the result of his own contributory. negligence. The pleadings were not made up at the September term. At the following March term of the court, before a reply had been filed, the defendant tendered and offered to file an amended answer, in which it alleged that more than one year had elapsed between the 15th day of August, 1899, when plaintiff's right of action accrued, and the 16th of August, 1900, when this suit was filed and summons issued thereon, and relied upon the lapse of time and the statute of limitations, and averred that this plea was omitted from the original answer by oversight and mistake on the part of the attorney. Plaintiff objected to the filing of this amended answer, and filed the affidavit of O. W. Pearl, clerk of the Bullitt circuit court, in which he stated that about the 5th of August, 1900, he received the petition in this case in a letter from plaintiff's attorney, requesting that same be filed, and summons issued thereon, but that no tax accompanied the petition, and that, as he did not know either the plaintiff or his attorney, he did not. file the petition, but when asked about the matter by plaintiff's attorney, several days prior to the 16th of August, 1900, informed him, in good faith, that it had been filed, and that he thought so at the time, and did not discover his mistake until the 16th of August, 1900, when he filed the petition and issued summons thereon. The trial court refused to permit the amended answer to be filed. The pleadings being made up by reply, a trial before a jury at the December term, 1901, resulted in a verdict and judgment in favor of the plaintiff for $10,000. Grounds and motion for a new trial having been overruled, the defendant appeals, relying

for a reversal upon numerous alleged errors to its prejudice in the court below.

First in order was the refusal of the trial court to permit the plea of limitation set up in the amended answer to go in. By section 2524 of the Kentucky Statutes of 1899 it is provided that "an action shall be deemed to have been commenced at the date of the first summons or process issued in good faith from the court or tribunal having jurisdiction of the cause of action." Section 39 of the Civil Code of Practice is as follows: "An action is commenced by filing in the office of the clerk of the proper court, a petition stating the plaintiff's cause of action; or, in cases wherein written pleadings are not required, by filing in such court the account, or written contract, or a short written statement of the facts on which the action is founded; and, in either case, by causing a summons to be issued or a warning order to be made, thereon." In Kellar v. Stanley, 86 Ky., 240, 9 R., 388, 5 S. W., 477, it was held that an action was not commenced until a summons was issued or a warning order made. In L. & N. R. Co. v. Smith's Adm'r, 87 Ky., 501, 9 R., 404, 9 S. W., 493, which was a suit for damages for personal injuries, the petition was filed and summons issued thereon and served upon the appellant within a year from the accrual of the cause of action; but the summons cited the appellant to appear at the next term of the court, which commenced within 10 days from the date of the summons. At the following term of the court the summons, upon defendant's motion, was quashed, upon the ground that it was made returnable to a term of court commencing within 10 days from its date. Thereafter an alias summons was issued and served, and, more than a year having elapsed from the accrual of the cause of action to the issuing of the alias summons,

plaintiff pleaded the statute of one year's limitation as
a bar to appellee's right to maintain the action; and it was
held that, where the plaintiff had filed his petition and
caused summons to issue thereon in time to save his right
of action, he had done all that the law required him to do,
as it was the duty of the clerk to issue the summons to,
the proper term of court, and it was not incumbent upon
the plaintiff to see that he did so. The ruling in this case
was followed in the case of L. & N. R. Co. v. Bowen, 18
R., 1099, 39 S. W., 31. In that case the petition was filed
in time, but the summons was issued in the name of D.
C. Brown instead of D. C. Bowen; and it was held that,
when plaintiff filed his suit and had summons issued, he
had a right to believe that the clerk would issue it in his
name, and that limitation did not run. These cases in-
volved the construction of the Code provisions. In Clark
v. Kellar, 66 Ky., 223, the court had before it a case aris-
ing under section 2524 of the statutes, and it was held
that if five years was permitted to elapse after the suing
out of process, which had been returned unexecuted, until
another process was sued out and executed, the bar was
effectual. In Hyatt v. Bank of Kentucky, 71 Ky., 193, it
was held that an action was commenced when the first
summons thereon was issued in good faith.

In all the cases bearing upon this question which we have
been able to find, where the plaintiff had filed his petition
in the clerk's office, and caused summons to be issued there-
on, within the statutory period of limitation, it was held
that this was the limit of his duty; that he had a right to
rely upon the clerk to issue the summons in proper form
and to the proper court. It appears both from the rea-
soning and decision in each of these cases that the duty on
the part of the plaintiff to file his petition and have sum-

mons issued thereon within the statutory period- was man-
datory, and that any negligence in this respect could not
be charged to the clerk as an excuse for the plaintiff's fail-
ure to perform his duty.   But in the case at bar, another
very serious question arises; the clerk, in his affidavit, tes-
tifies that, whilst the petition was mailed to him within
the period of limitation, it was not accompanied by the tax
on the suit; that he was unacquainted with the plaintiff
and his attorney, and for this reason declined to file the
petition or issue the process; nor does it appear that this
omission was ever supplied.   As said in Wood v. Carpenter,
101 U. S., 135, 25 L. Ed., 807:  "Statutes of limitation are
vital to the welfare of society, and are favored by the law.
They are found and approved in all systems of enlightened
jurisprudence.   They promote repose by giving security and
stability to human affairs.   An important public policy
lies at their foundation.   They stimulate to activity and
punish negligence.   While time is constantly destroying
the evidences of rights, they supply its place by a presump-
tion which renders proof unnecessary.   Mere delay, extend-
ing to the limit prescribed, is itself a conclusive bar.   The
bane and the antidote go together."   Section 132 of the
Civil Code provides that the plaintiff may at any time be-
fore answer amend his petition without leave.   In this case
no reply had been filed to defendant's original answer, and
the amendment was tendered for the purpose of supplying
a defense which had been omitted from the original answer
by the oversight and mistake, of counsel.   Section 134 of
the Civil Code provides that the court may at any time, in
furtherance of, justice, permit a pleading to be amended by
correcting a mistake in any respect; and, in our opinion,
the trial court erred in refusing to permit the amended an-
swer to be filed, and upon return of the case the amended

answer should be filed, and plaintiff allowed to reply thereto.

We will next consider alleged errors in the instructions Nos. 1 and 2 given to the jury on plaintiff's motion.

No. 1 is as follows: "The court instructs the jury that it was the duty of the defendant to keep its portable chute, when not in use, at such distance from its moving trains as was reasonably necessary to enable its servants to ascend or descend the side ladders of its freight trains in the discharge of their duties, with reasonable safety, without the exercise of more than ordinary care. And if the jury believe from the preponderance of the evidence that the plaintiff was injured whilst discharging in good faith his duty to defendant, under the directions of defendant's employe superior in authority to plaintiff, and that his injuries in controversy were caused by the gross negligence of defendant, its agents or employes, in failing to keep, if it did so fail, its portable chute, when not in use, at a reasonably safe distance from the side ladders on its moving trains, the law is for the plaintiff and the jury should so find. If, however, the jury believe the plaintiff knew that the defendant's portable chute was too close for reasonably safe passage on the side ladder of defendant's train at the time and place in controversy, then, in that event, the law is for the defendant, and the jury should so find." By this instruction the jury are told, as a matter of law, that it was negligence in appellant not to keep its coal chute far enough from the track so as not to injure employes on the side ladders of passing cars. Whether or not it is possible to maintain a portable coal chute used for furnishing coal to passing engines so far away from moving trains that one on the side ladder of a box car may pass safely between

the chute and the train was a question of fact for the jury. It may be that it is absolutely necessary to construct coal bins as in the case at bar, and, if it be not so, still it may not be negligence to do so. In the case of L. & N. R. Co. v. Mounce's Adm'r (decided Jan. 23, 1903), 24 R., 1378, 71 S. W., 518, where damages were sought for the death of a switchman in appellant's yard at Livingston by reason of the alleged fact that the switch lights were unlighted, the court used this language: "Besides, instruction No. 1 given to the jury is erroneous and prejudicial to the defendant, as in it the court told the jury that it was defendant's duty to have the lights in reasonably good order and condition to show the location of the switch, and, if he failed to do so, plaintiff was entitled to recover. Under this instruction, if the jury found that the lights were out, it was bound to find for the plaintiff, however great may have been the care exercised by the defendant. As was said by this court in Needham v. L. & N. R. Co., 85 Ky., 425, 8 R., 869 [3 S. W., 797, 11 S. W., 306]: 'It is the duty of the master to use ordinary care in providing for the use of the servant safe machinery, and premises in safe condition. He is not, however, an insurer.' In Shearman & Redfield on Negligence (4th Ed.), section 189, the principle is stated in these words: 'The master is bound to use ordinary care, diligence and skill for the purpose of protecting his servants from encountering unnecessary risks in the service, but he is not bound to use any higher degree of care for that purpose.' These citations are in accord with the great weight of authority on this subject. In fact, we know of none to the contrary." This instruction is objectionable for another reason, as it only requires plaintiff "to know" that the chute was too close to the track for reasonably safe passage by it on the side ladder of the car. It should

have contained the additional qualification that he knew, or could by the exercise of ordinary care have known.

The verbiage of the second instruction is also unusual, and calculated to mislead the jury. It tells the jury that: "If they find for the plaintiff, they should award such damages, if any, as the proof shows he has sustained." This general expression is followed by the words: "In estimating the amount of damage, the jury should take into consideration the age and situation of the plaintiff, his earning capacity and its probable duration, and his bodily suffering and mental anguish, and the extent to which he is disabled in making a support for himself by reason of the injuries received; and the jury, in addition to such compensatory damages, may award punitive damages, not exceeding, in all, $25,000." This court has frequently announced, in actions for personal injuries where death does not ensue, that compensatory damages were confined to the expense of cure, value of time lost, and fair compensation for physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money. See Parker v. Jenkins, 66 Ky., 587; L., C. & L. R. Co. v. Case's Adm'r, 72 Ky., 736; C. P. & R. v. Kuhn, 86 Ky., 578, 9 R., 725, 6 S. W., 441, 9 Am. St. Rep., 309; Carson v. Singleton, 23 R., 1626, 65 S. W., 821. The instruction is erroneous in that it does not confine the jury to the consideration of these elements of damage. It is also erroneous in telling them that they should take into consideration the situation of the plaintiff, and in authorizing punitive damages—both for the reason that the jury are not required to find, as a condition precedent to awarding such damages, that the acts of the defendant which are complained of amounted to gross negligence, and for the reason that the proof discloses no ground for the recovery of punitive damages at all. The

plaintiff admitted that he knew the coal chutes were portable and were frequently moved from one place to another, and that they were too close to the track for reasonably safe passage by them of a man riding upon the side ladder of a moving box car; that his injuries resulted solely from the fact that he believed the car on which he was riding had passed beyond the chutes before he attempted to descend the side ladder for the purpose of alighting.

Appellant insists that the overwhelming weight of testimony in the case conduces to show that appellee got upon the car for his own purposes, and not in the interest or business of the company; that he had full information as to the relative location of the coal chutes, and that his injuries resulted from his negligence in riding on the side ladder of the box car, without proper precautions on his part to avoid being struck by the coal chute; and that a peremptory instruction should have gone. Where there is any conflict in the testimony, questions of negligence should be left to the jury; but, in our opinion, there was such a decisive preponderance of the evidence in this case against the finding of the jury that it should have been set aside and a new trial awarded on this ground, as well as for errors of the court pointed out in the opinion.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.